## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ROBERT C. WEDDINGTON,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. DLB-24-1913** |
| **DIETARY SGT. S. JOHNSON,** | * | |
| **Defendant.** | * | |

### MEMORANDUM OPINION

Robert C. Weddington, who is not represented by counsel, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Dietary Sgt. Stacie Johnson, alleging that Johnson assaulted him when she struck his arm and knocked a food tray out of his hands. ECF 5.[1] Johnson moved to dismiss the amended complaint or, in the alternative, for summary judgment. ECF 14.[2] Weddington opposed the motion, ECF 20, and Johnson replied, ECF 27. Also pending are Weddington's motion for default judgment, ECF 18; Weddington's motion for summary judgment, ECF 28; Johnson's motion to strike Weddington's motion for summary judgment, ECF 31; and Weddington's motion for appointment of counsel, ECF 33. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the following reasons, Johnson's motion, treated as a motion for summary judgment, is granted, and the motions for default judgment, to strike, and for appointment of counsel are denied.

---

[1] The Clerk is directed to amend the docket to reflect Johnson's full name.

[2] Johnson moved to seal Exhibit 6 to her motion to dismiss because it "contains Plaintiff's sensitive personal and medical information." ECF 16, ¶ 1. The motion is granted. The Clerk also shall seal Exhibit 2, ECF 14-4, which includes several of the same medical records.

## I.    Background

Weddington alleges that on May 24, 2024, while he was incarcerated at Patuxent Institution ("Patuxent"), Officer Wood let him into the dining room after count was completed. ECF 5, at 5. Weddington says he was called up to the "feed up slot" for a tray. *Id.* At the time, Weddington's left arm was in a sling from an accident that had occurred a month earlier. *Id.* As Weddington carried his tray with both hands, Johnson "walked up aggressive[ly] and in [a] swinging motion stroke [sic] [his] left wrist and hand." *Id.* Weddington does not allege Johnson injured him; he says that his "left arm was already in a sling," and when he went "to medical[,] pain pills w[ere] not given." *Id.* at 6. Weddington reported the incident to Lt. Washington, Captain Clark, and the Intelligence and Investigative Division ("IID"). *Id.* at 5–6.

Johnson remembers the incident differently. She was on duty in the kitchen at Patuxent on May 24, 2024. ECF 14-5, ¶ 3. One of her duties was to check that the dining room was ready for scheduled mealtimes. *Id.* She saw Weddington in the dining hall "taking a food tray from the serving window" before his scheduled mealtime. ECF 14-4, at 71; *see* ECF 14-5, ¶ 3. For safety and security reasons, only inmates designated for "early chow" were permitted in the dining room when Weddington, who was not so designated, entered the room. ECF 14-5, ¶¶ 3–5. Johnson informed Weddington that it was not yet his mealtime, that he had to return to his housing unit, and that he could come back at his scheduled mealtime. *Id.* ¶¶ 4–5; ECF 14-4, at 71. Weddington responded by stating "You Have A Real F---- Problem" and saying "in a threatening manner" that Johnson "Got The Right One This Time." ECF 14-4, at 71. Johnson directed Officer Mbadghua to escort Weddington back to his housing unit. *Id.*

On June 4, 2024, Weddington filed an administrative remedy complaint ("ARP") regarding Johnson's alleged assault. ECF 5, at 6. Weddington's ARP was dismissed the same day because the incident was under IID investigation. *Id.*; ECF 14-4, at 70.

The IID Incident Report notes that the alleged "incident was not captured on video, due to a technical issue with the dining hall cameras." ECF 14-3, at 7. During the investigation, Johnson reported that, after she informed Weddington that he needed to return to his housing unit, he became belligerent and had to be escorted from the dining room. *Id.* at 8. Johnson denied ever touching Weddington or his food tray and stated that his tray was on a table during their interaction. *Id.* The investigator concluded that there "were no witnesses, physical evidence, or video indicating that an assault occurred." *Id.*

On June 28, 2024, Weddington filed this § 1983 suit against Johnson seeking damages for her alleged assault. ECF 1. On October 25, 2024, Weddington filed an amended complaint. ECF 5.

Meanwhile, on October 28, 2024, Weddington appealed the dismissal of his ARP to the Incarcerated Individual Grievance Office ("IIGO"). ECF 14-6, at 4–5. The IIGO instructed Weddington that he needed to file additional documentation, but he failed to do so. *Id.* at 6. On April 14, 2025, the IIGO informed Weddington that his ARP appeal would not be considered until the IID report was received. *Id.* at 7. On December 29, 2025, the IIGO denied Weddington's appeal because he "failed to substantiate [his] allegation that Sgt. Johnson assaulted [him]." ECF 28-1.

On April 16, 2025, Johnson moved to dismiss the amended complaint or, in the alternative, for summary judgment. ECF 14. On April 21, 2025, after Johnson filed her dispositive motion but likely before Weddington received a copy of the motion, Weddington moved for default judgment, claiming that Johnson did not timely respond to the amended complaint. ECF 18. On February 2,

2026, Weddington moved for summary judgment. ECF 28. He attached the December 29, 2025 IIGO order. ECF 28-1.

## II.   Weddington's Motion for a Default Judgment

Weddington moved for a default judgment against Johnson. Default may be entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The decision to enter default is left to the discretion of this court. *See Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002). The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010).

The Court will not enter default or a default judgment against Johnson. Johnson's answer to Weddington's amended complaint originally was due on February 18, 2025. ECF 9. Before that deadline, Johnson requested an extension of time to respond to the amended complaint to April 16, 2025, ECF 12, which the Court granted, ECF 13. Johnson timely filed her dispositive motion on April 16, 2025. ECF 14. Johnson is not in default. Weddington's motion for a default judgment is denied.

## III.   Dispositive Motions

### A.   Standard of Review

Johnson moves to dismiss the amended complaint for failure to state a claim or, alternatively, for summary judgment. When, as here, the parties present and the Court considers matters outside the pleadings on a dispositive motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Weddington received sufficient notice that the motion may be treated as a summary judgment motion. The Court notified him that he had the right to respond to Johnson's motion, that the motion could be construed as one for summary judgment, and that if he did not timely file an adequate written response, the Court could dismiss the case or enter judgment against him without providing him another opportunity to respond. ECF 17. Moreover, Johnson's motion, identifying summary judgment as possible relief, provided sufficient notice for Weddington to have a reasonable opportunity to present relevant evidence in support of his position. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). What's more, Weddington also filed a motion for summary judgment. Thus, the Court is satisfied that Weddington has been advised that Johnson's motion could be treated as one for summary judgment and that he has been given a reasonable opportunity to present materials in response to the motion.

When a party seeks to defeat summary judgment because the record is incomplete, they may file a Rule 56(d) affidavit detailing the specific facts that are yet to be discovered and are necessary to defeat summary judgment. *See Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Rule 56(d) motions are "broadly favored and should be liberally granted" to protect non-moving parties from premature summary judgment motions. *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013) (en banc) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)). Even so, to justify a denial of summary judgment on the ground that additional discovery is necessary, the facts identified in the Rule 56(d) affidavit must be "essential to . . . [the] opposition." *See* Fed. R. Civ. P. 56(d).

In his opposition to the summary judgment motion, Weddington seeks discovery about when, why, and how long the dining room cameras were not working, and he also appears to seek

testimony from "two kitchen workers" who were present at the time of the incident. ECF 20, at 3, 9. Although Weddington did not request this discovery through a Rule 56(d) declaration, the Court construes his requests for discovery in his opposition as a Rule 56(d) request. *See, e.g.*, *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021); *Farabee v. Gardella*, 131 F.4th 185, 193–95 (4th Cir. 2025) (district courts must afford pro se plaintiffs leniency in regard to Rule 56(d)'s requirements).

Weddington's Rule 56(d) request is denied because he fails to explain how the evidence is necessary to defeat Johnson's motion. *See, e.g.*, *Escobar-Salmeron v. Moyer*, 150 F.4th 360, 372 (4th Cir. 2025) (affirming grant of summary judgment despite self-represented party's Rule 56(d) declaration, where declaration "contained only '[v]ague assertions as to matters upon which the district court should have allowed discovery'" (quoting *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995))). Discovery about when, why, and how long the dining room cameras were not working will not help him defeat summary judgment. Perhaps if there was actual video evidence of the incident—and not even Weddington claims there is—the need for discovery of the video might be grounds to defeat summary judgment. But knowing when, why, and how long the dining room cameras were not working would not "create[] a genuine issue of material fact sufficient to defeat summary judgment." *See Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995) (noting Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment"). As for the eyewitness testimony of kitchen workers, Weddington does not state who the witnesses are, what their testimony would be, or why he was unable to submit an affidavit from them in opposition to the summary judgment motion. Without more information about the proposed testimony of the two kitchen workers, Weddington

6

has not shown that their testimony would create a genuine issue of material fact. His Rule 56(d) request is denied.

The Court rules on the summary judgment motion on the current record. Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 251. The court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, this court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

**B.** **Discussion**

**1.** **Exhaustion of Administrative Remedies**

Johnson raises the affirmative defense that Weddington failed to exhaust his administrative remedies. The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion under § 1997e(a) is mandatory, and a prisoner, therefore, must exhaust his available administrative remedies before this Court will hear his claim. *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F. 2d 674, 682 (4th Cir. 2005). Consequently, if Weddington has not properly presented any of his claims through an available administrative remedy procedure, that claim must be dismissed pursuant to the PLRA. *See Ross*, 136 S. Ct. at 1857. A court will not dismiss a claim as unexhausted "if a prisoner, through no fault of his own, was prevented from availing himself of [an administrative remedy]." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

An administrative remedy procedure process applies to all Maryland prisons. Md. Code Regs. ("COMAR") 12.02.28.01 *et seq.* A prisoner seeking redress for a rights violation must follow that process, beginning with filing an ARP request with the prison's managing official. Md. Code Ann., Corr. Servs. § 10-206(b); COMAR 12.07.01.04; *see Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006) (to exhaust administrative remedies, a prisoner must complete "the administrative review process in accordance with the applicable procedural rules"). If his ARP request is dismissed, he can challenge the decision by filing an appeal with the Commissioner of Corrections. COMAR 12.07.01.05C. If he is dissatisfied with the result when he completes that procedure, he

may file a grievance with the IIGO. Corr. Servs. §§ 10-206(a), 10-210; COMAR 12.07.01.03, 05B. The IIGO may refer the complaint to an administrative law judge ("ALJ") for a hearing or dismiss it without a hearing if it is "wholly lacking in merit on its face." Corr. Servs. §§ 10-207, 10-208; Cts. & Jud. Proc. § 10-208(c); COMAR 12.07.01.06A, .07, .07B, .08. If the IGO dismisses the complaint, its dismissal serves as a final agency determination. Corr. Servs. § 10-207(b)(1). If the complaint is referred to an ALJ, the ALJ provides a proposed decision to the Secretary of Department of Public Safety and Correctional Services. *See* Corr. Servs. § 10-209(b)–(c). The Secretary, in turn, makes a final agency determination. *See id.*

Here, Johnson asserts that Weddington did not appeal the Warden's dismissal of his ARP to the Commissioner of Correction. Weddington bypassed the Commissioner and appealed directly to the IIGO instead, which had not yet ruled on the appeal when Weddington filed this suit. Weddington's failure to fully exhaust his administrative remedies is inconsequential. This is because an inmate grievance regarding an incident that is subject to a pending IID investigation (as is the case here) is automatically dismissed as procedurally deficient pursuant to Md. Code Regs. 12.02.28.11(B). Thus, an inmate "need not seek additional review of that decision in the hope that the reviewing bodies will act contrary to law." *Younger v. Crowder*, 79 F.4th 373, 381 (4th Cir. 2023). "[W]hen there is an Intelligence and Investigative Division investigation into an officer's use of force, Maryland's scheme for administrative remedies is unavailable," and an inmate who attempts to exhaust administrative remedies will reach "nothing but 'dead end[s]' that

are 'practically speaking, incapable of use.'" *Id.* (citing *Ross*, 578 U.S. at 643–44).[3] Therefore, administrative remedies were unavailable for Weddington. The Court considers the merits of his excessive force claim.[4]

### 2.    Excessive Force

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams*, 77 F.3d at 761. An officer violates an inmate's Eighth Amendment right when he subjects the inmate to "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To prove an Eighth Amendment violation, a prisoner must show both that he suffered a "deprivation" or "injury" that was objectively "sufficiently serious" and that the official he accuses of injuring him "acted with a sufficiently culpable state of mind." *Williams*, 77 F.3d at 761. "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Id.* (quoting *Hudson*, 503 U.S. at 5).

For excessive force, the inmate must show that the officer used force and caused "more than *de minimus* pain or injury," *id.*, and did so "maliciously and sadistically for the very purpose

---

[3] In her reply, Johnson argues that *Younger* requires prisoners to pursue all administrative remedy steps. ECF 27, at 6. She relies on an unreported decision in *Copez v. Snoberger*, No. ELH-23-465, 2024 WL 4815985 (D. Md. Nov. 18, 2024), in which the court discussed *Younger* and then dismissed a claim as unexhausted when the ARP review was unavailable for disciplinary proceedings and Copez failed to appeal the dismissal. *Copez* is not on point, however, because it did not involve an IID investigation.

[4] Weddington argues in his summary judgment motion that he exhausted his administrative remedies. ECF 28. Johnson moves to strike the motion because it is essentially a surreply to her reply in support of summary judgment in her favor. ECF 31. In light of Weddington's pro se status, the Court denies the motion to strike his dispositive motion. Still, exhaustion of administrative remedies does not entitle Weddington to summary judgment; exhaustion of administrative remedies is a prerequisite to filing suit. *See Ross*, 136 S. Ct. at 1857. Because exhaustion of administrative remedies is the only grounds on which Weddington moves for summary judgment, his motion is denied.

of causing harm," rather than "in a good faith effort to maintain or restore discipline," *Hudson*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). "An injury is sufficiently serious for purposes of the objective component of an Eighth Amendment excessive force claim as long as it rises above the level of de minimus harm." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). Unlike for other Eighth Amendment claims, the inmate "need not show that such force caused an 'extreme deprivation' or 'serious' or 'significant' pain or injury to establish a cause of action" for excessive force. *Williams*, 77 F.3d at 761 (quoting *Hudson*, 503 U.S. at 9). Thus, the absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010). "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7). This is not to say that any use of force may support an excessive force claim: "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* (quoting *Hudson*, 503 U.S. at 9).

The requirement that an officer act "'maliciously and sadistically for the very purpose of causing harm'" is "a higher standard" than the subjective component for other Eighth Amendment claims. *See Williams*, 77 F.3d 761 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." *Hudson*, 503 U.S. at 9 (citation omitted). Factors for consideration are: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell;

11

and (4) 'any efforts made to temper the severity of a forceful response.'" *Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 321).

Here, Weddington claims that Johnson struck his injured arm, which was in a sling. Johnson denies ever touching him or his injured arm. This dispute is immaterial. Even if Johnson struck Weddington's arm in the manner Weddington recalls, he has not identified evidence of more than de minimus pain or injury. Weddington's medical records do not show he suffered any injury, and he admits there was no bruising, even though he says in an unsworn statement that he was "hurt[]." ECF 20, at 12. Because there is no evidence of a "discernible injury," Weddington cannot prevail on his excessive force claim. *See Wilkins*, 559 U.S. at 37–38.

Further, even if Johnson had inflicted more than de minimus pain or injury on Weddington, Weddington has not submitted any evidence that Johnson did so "maliciously and sadistically for the very purpose of causing harm." *See Hudson*, 503 U.S. at 6; *Williams*, 77 F.3d at 761. Consequently, Johnson is entitled to summary judgment on the excessive force claim.[5]

"When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–727 (1966)). Accordingly, to the extent Weddington raises any state law claims, they are dismissed without prejudice.

## IV.    Motion for Appointment of Counsel

Weddington asks the Court to appoint counsel for him. In civil cases, a federal district court judge has the discretion under 28 U.S.C. § 1915(e)(1) to appoint counsel, but only if an indigent

---

[5] To the extent Weddington sought to bring a denial of medical care claim against Johnson, he makes no allegations that she was personally involved in escorting him to medical or in his subsequent treatment. Therefore, any such claim would fail.

claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). "Courts consider 'the type and complexity of the case,' whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim." *Giddings v. Montgomery Cnty.*, No. GJH-21-959, 2021 WL 5921382, at *1 (D. Md. Dec. 15, 2021) (quoting *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989)), *aff'd sub nom. Giddings v. Montgomery Cnty.*, No. 22-6057, 2022 WL 1284296 (4th Cir. Apr. 29, 2022). Weddington does not identify any exceptional circumstances. Weddington capably opposed Johnson's motion and filed his own motions. Because the Court grants Johnson's summary judgment motion, Weddington does not need representation. The motion is denied.

## V.    Conclusion

For the foregoing reasons, Johnson's motion, treated as a motion for summary judgment, is granted. Johnson is entitled to summary judgment on the excessive force claim. Johnson's motion to seal Exhibit 6 to her summary judgment motion is granted. The Clerk also shall seal Exhibit 2 to Johnson's summary judgment motion. Weddington's motions for default judgment, summary judgment, and appointment of counsel are denied. Any state law claims are dismissed without prejudice.

A separate order follows.

March 24, 2026
Date

Deborah L. Boardman
United States District Judge